**MANDATE**

20-981-cv
*Girard v. International Association of Approved Basketball Officials, Inc., et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of January, two thousand twenty-one.

PRESENT: DENNY CHIN,
JOSEPH F. BIANCO,
STEVEN J. MENASHI
*Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GINGER GIRARD,

        *Plaintiff-Appellant*,

v.                               20-981-cv

INTERNATIONAL ASSOCIATION OF APPROVED
BASKETBALL OFFICIALS, INC., CENTRAL
CONNECTICUT BOARD NO. 6, INC.,

        *Defendants-Appellees*.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

[*] The Clerk of Court is directed to amend the official caption to conform to the above.

MANDATE ISSUED ON 02/12/2021

| | |
|---|---|
| FOR PLAINTIFF APPELLANT: | JAMES V. SABATINI, Sabatini and Associates, LLC, Newington, Connecticut. |
| FOR DEFENDANTS-APPELLEES: | MICHELLE GRAMLICH, Law Offices of Musco & Iassogna, New Haven, Connecticut, for International Association of Approved Basketball Officials, Inc. |
| | DIANE C. MOKRISKI, O'Connell, Attmore & Miller, LLC, Hartford, Connecticut, for Central Connecticut Board No. 6, Inc. |

Appeal from the United States District Court for the District of Connecticut (Shea, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Ginger Girard appeals from the district court's February 28, 2020, judgment dismissing her employment discrimination complaint against defendants-appellees International Association of Approved Basketball Officials, Inc. ("IAABO"), and Central Connecticut Board No. 6, Inc. ("Board 6") (collectively, "defendants").[1] In a decision entered February 27, 2020, the district court granted defendants' motions pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim. Girard, a female middle and high

---

[1] Girard's complaint also named as a defendant "Central Connecticut Board 6 of the International Association of Approved Basketball Officials, Inc." With Girard's consent, the district court dismissed all claims against that defendant on the ground that it was not a separate and distinct legal entity.

- 2 -

school basketball referee, sued defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging discrimination on the basis of gender and retaliation for complaining of the alleged discrimination. We assume the parties' familiarity with the underlying facts and procedural history in this case.

We review *de novo* the grant of a motion to dismiss pursuant to Rule 12(b)(6), *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014), accepting as true the factual allegations contained in the complaint, *Menaker v. Hofstra Univ.*, 935 F.3d 20, 26 (2d Cir. 2019). Because we agree with the district court that Girard has failed to plausibly allege that defendants are her "employers" or "employment agencies" under Title VII, we affirm the judgment of the district court and do not reach defendants' additional arguments.

BACKGROUND

As alleged in the complaint, Girard officiates middle and high school basketball games in Connecticut. IAABO and Board 6 control the assignment of referees to middle and high school basketball games at schools in Connecticut, and they determine which referees will work which games. While defendants do the "matchmaking" of pairing officials with games, the referees are paid on a per-game basis directly by the "schools, school districts and league of schools." Compl. ¶¶ 72-73. Referees are paid more for working high school varsity-level games than for "sub-varsity" games at the middle school, freshman, and junior varsity levels. Compl. ¶ 51.

- 3 -

Defendants use a peer rating system to determine which referees are eligible to officiate varsity games.  Defendants' ratings of referees and their determinations of varsity-eligibility thus significantly affect the number of work opportunities available to referees and what they will be paid.

As further alleged in the complaint, defendants' peer rating system has led to disparate varsity-eligibility and rankings between genders.  Approximately 99% of the varsity referees on Board 6's roster are male.  Defendants have refused to adopt objective methods for assessing referees, and thus continue to use subjective rankings systems that are influenced by gender bias.  Defendants' practices have caused female referees to be underrepresented at the varsity level.

In 2009, Girard complained to the president of Board 6, David Anderson, that she was not receiving opportunities to develop in games with seasoned referees and advance to the varsity level.  Instead, she was assigned to low level games because of her gender.  Dissatisfied with Anderson's response, Girard filed a grievance with Board 6's Professional Standards Committee, but the committee rejected it.  Thereafter, defendants reduced the number of games Girard was assigned to and continue to assign her to sub-varsity games in retaliation for her complaints about gender discrimination.

DISCUSSION

Title VII makes it unlawful for "employer[s]" to engage in discriminatory "employment practices." 42 U.S.C. § 2000e-2. To state a claim under Title VII, a plaintiff must therefore allege "the existence of an employer-employee relationship." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). In *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), the Supreme Court identified thirteen non-exhaustive factors that courts may (but are not required to) consider in determining whether an employer-employee relationship exists:

> [1] the hiring party's right to control the manner and means by which the product is accomplished . . . . [;] [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party.

*Gulino*, 460 F.3d at 371 (second and third alterations in original) (quoting *Reid*, 490 U.S. at 751–52). The "principal guidepost" is the "common-law element of control." *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003). "[A] prerequisite to considering whether an individual is [an employee] under common-law agency principles is that the individual have been *hired* in the first instance." *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997) (emphasis added). "In determining whether a person has been 'hired,' we look primarily to 'whether [a plaintiff] has received direct or

indirect remuneration from the alleged employer.'" *Gulino*, 460 F.3d at 372 (quoting *Pietras v. Bd. of Fire Commn'rs of Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999)).

Here, Girard alleges that schools, not the defendants, pay her for refereeing. And she has not alleged that defendants provide her with any other kind of remuneration. Hence, defendants are not Girard's "employers" as a matter of law.

Girard asserts that defendants are liable as "employment agencies," which are barred by Title VII from engaging in discriminatory practices and retaliation. *See* 42 U.S.C. § 2000e-3(a) (prohibiting retaliation by an "employment agency"); 42 U.S.C. § 2000e-2(b) (prohibiting discriminatory practices by an "employment agency"). Title VII defines an "employment agency" to mean "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer." 42 U.S.C. § 2000e(c). That is, Girard alleges the requisite employer-employee relationship is between her and the schools for which she referees, and defendants facilitate that employment relationship. Under this theory, Girard must plausibly plead an employer-employee relationship with the schools for defendants to have acted as employment agencies.

Girard clears the remuneration hurdle with respect to the schools because she alleges that "the schools, school districts and league of schools" (collectively, "the schools") pay her "on a per game-basis [sic]." Compl. ¶ 73; *see Pietras*, 180 F.3d at 473. But that is not the end of the matter. We must still apply common-law agency

- 6 -

principles in deciding whether an employment relationship exists.  *Gulino*, 460 F.3d at 371.  The question is whether Girard plausibly alleges an employer-employee relationship with the schools, that is, "the conventional master-servant relationship as understood by common-law agency doctrine."  *Reid*, 490 U.S. at 740.

Under the *Reid* factors, Girard has not plausibly alleged that she was an employee of the schools in her capacity as a referee.  She does not allege that the schools exercised meaningful control over how games are officiated.  She also fails to allege the duration of the relationship between a referee and a school.  While the complaint alleges that Girard refereed a total of 37 games in the 2008–2009 season, the complaint does not indicate whether she did so for the same or different schools or whether she refereed for the same school on more than one occasion or whether she had a relationship with any school that would suggest an employer-employee relationship.  And Girard does not allege she received any employment benefits from the schools other than pay for games she officiated.  As the district court observed, these facts do not distinguish Girard's relationship with the schools from that of an independent contractor where the schools otherwise lack the right or ability to control how the services are performed.

Because Girard has failed to allege that she was employed by the schools, she has also not alleged that defendants are liable as "employment agencies" under Title VII.

\* \* \*

We have considered Girard's remaining arguments and conclude they are without merit. Accordingly, the judgment of the district court is **AFFIRMED.**

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

- 8 -